**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 08-cr-1009-2 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| TERRENCE BROWN ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Terrence Brown's Motion for a New Trial [150]. For the reasons stated below, the motion is respectfully denied.

**I.   Background**

On August 13, 2009, Defendants Lynn Rowe and Terrence Brown were charged together in a superseding indictment with one count of knowingly and intentionally attempting to posses with intent to distribute 5 kilograms or more of cocaine in violation of Title 21, United States Code, § 841(a)(1) (Count II).  Defendant Brown also was charged with one count of possessing a firearm in furtherance of the drug-trafficking crime alleged in Count Two in violation of 18 U.S.C. § 924(c) (Count III).[1]  On January 10, 2011, the Court issued an oral ruling ordering separate trials of Defendants Brown and Rowe.  Defendant Brown proceeded to trial first.

In the summer of 2008, the Drug Enforcement Administration ("DEA") developed two cooperating sources (hereinafter, "CS-1" and "CS-2").  CS-1 and CS-2, together with others, ran a large-scale drug trafficking organization ("DTO"), centered in Chicago, Illinois. The DTO imported thousands of kilograms of cocaine and hundreds of kilograms of heroin from Mexico to Chicago, Illinois and elsewhere.  In early December 2008, CS-1 and CS-2 agreed to set up a number of undercover narcotics transactions with DTO customers, including Defendants.

---

[1]   Prior to trial, the Government moved to dismiss Count I of the superseding indictment (conspiracy under 21 U.S.C. § 846).

On December 3-4, 2008, CS-1 and CS-2 participated in five recorded calls with Defendant Terrence Brown. Law enforcement officers were present in the room during these calls and recorded these calls while listening to both sides of the conversation. During these calls, Brown agreed to purchase 10 kilograms of cocaine from CS-1 and CS-2. The transaction was originally supposed to take place on December 3, 2008, but Brown had car trouble so the transaction was postponed to December 4. On December 4, 2008, DEA arranged for an undercover officer to deliver 10 kilograms of look-alike substance to Brown.

On December 4, 2008, Rowe was a passenger in a blue Dodge Durango that was driven by Brown. The two traveled together to the area of 31st Street and Normal Street in Chicago to meet with an individual who, unbeknownst to Brown and Rowe, was an undercover DEA officer, and to take delivery of 10 kilograms of cocaine. During the meeting, the undercover officer retrieved a bag containing 10 kilograms of a cocaine look-alike substance, opened the rear driver side door of the Durango, and placed the bag on the back seat. At that point, Rowe exited the front passenger side of the Durango, entered the rear passenger side door, and sat next to the undercover officer. Once in the back seat, Rowe looked inside the bag containing the look-alike kilograms and appeared to be counting the kilograms. Brown handed Rowe a bag containing approximately $14,470, which Rowe then handed to the undercover officer. After the officer took the cash and exited the Durango, Brown and Rowe were arrested. During the arrest, agents recovered two cell phones from Brown's person (hereinafter referred to as "Brown phone 1" and "Brown phone 2") and three cell phones from Rowe's person (hereinafter, "Rowe phone 1," "Rowe phone 2" and "Rowe phone 3"). During a search of the Durango, agents recovered a loaded pistol in a hidden compartment.

At trial, the Government presented evidence of Brown's charged conduct, which included: (1) recorded phone conversations between Brown and the cooperating sources on December 3 and 4, 2008; (2) a video recording of the initial encounter between Defendants and the undercover officer just before the exchange of a substance purporting to contain 10 kilograms of cocaine; (3) the testimony of various law enforcement agents who observed the events of December 4, 2008; and (4) testimony concerning statements made by Brown following his arrest concerning his participation in the transaction and his admission that the firearm found in the trap compartment of the Durango was kept for protection. Furthermore, Defendant testified in his defense. He admitted to his involvement and participation in the December 4 drug transaction, but testified that the firearm recovered from the trap compartment in the Durango was not carried in furtherance of that drug transaction. Rather, he claimed that it was kept for personal protection as a result of a beating he suffered in 2008 that resulted in a lengthy hospitalization. On January 12, 2011, the jury returned verdicts of guilty on both counts.

## II.  Legal Standard

A motion for a new trial is brought pursuant to Federal Rule of Criminal Procedure 33. Rule 33 provides that the court "may vacate any judgment and grant a new trial if the interest of justice so requires." Newly discovered evidence is the only specifically listed basis in the rule (Fed. R. Crim. P. 33(b)(1)), although the rule allows for a new trial on "other grounds," so long as the interest of justice requires it. See Fed. R. Crim. P. 33(b)(2). In this case, Defendant does not argue that he is entitled to a new trial based on newly discovered evidence. See also *United States v. Bender*, 539 F.3d 449, 455-56 (7th Cir. 2008) (four-part test for new trial based on newly discovered evidence). The Seventh Circuit has indicated that a motion for a new trial may be granted if there was insufficient evidence to support a conviction or if there were errors in

evidentiary rulings, both of which Defendant Rowe argues. See *United States v. Christ*, 513 F.3d 762, 775 (7th Cir. 2008). Other appropriate bases have been recognized in other cases, if only implicitly at times. See *United States v. Hendrix*, 482 F.3d 962, 967 (7th Cir. 2007) (prosecutorial misconduct); *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991) (ineffective assistance of counsel); *Brodie v. United States*, 295 F.2d 157, 160 (D.C. Cir. 1961) (Burger, J.) (recognizing that the bases for a new trial embodied in Fed. R. Crim. P. 33(b)(2) are broad, though they are "temperately to be utilized").

Federal Rule of Criminal Procedure 29 provides that the Court must grant a motion for a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Evidence is sufficient to sustain a conviction so long as a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, "could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Irby*, 558 F.3d 651, 653 (7th Cir. 2009); *United States v. Thornton*, 539 F.3d 741, 748 (7th Cir. 2008).

**III. Analysis**

In his motion, Defendant Brown maintains that the jury's verdict on Count III—possession of a firearm in furtherance of a drug-trafficking crime under 18 U.S.C. § 924(c)—was not supported by sufficient evidence. As previously set forth, Brown admitted to his involvement and participation in the December 4 drug transaction, but testified that the firearm recovered from the trap compartment in the Durango was kept for personal protection as a result of a beating that he suffered in 2008 and that resulted in a lengthy hospitalization. He also presented evidence that the trap compartment was never accessed during the transaction, that it was located in the third row of seats, which were unoccupied during the transaction, and that the trap took almost a minute to open.

To sustain a conviction under § 924(c), the Seventh Circuit has held that the "in furtherance of" element of the statute "requires that the weapon further, advance, move forward, promote or facilitate the drug-trafficking crime." *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005) (citing *United States v. Castillo*, 406 F.3d 806 (7th Cir. 2005)). While the jury was free to accept Brown's explanation that the gun was used solely to protect himself from future beatings—indeed, the Court instructed the Jury that the mere presence of a weapon at the scene of a drug crime, without more, is insufficient to prove that the gun was possessed "in furtherance of" the drug crime—the jury was equally free to credit the evidence from which it could conclude that the firearm was possessed for the purpose of furthering the December 4 drug trafficking offense. The Government presented the following evidence in support of its theory: (1) law enforcement testimony about the location from which the firearm was recovered, specifically inside of the trap compartment of the Durango; (2) expert testimony from Special Agent Timothy Oko, who testified that narcotics traffickers sometimes carry firearms to protect drugs and drug proceeds and that handguns are often stored in a readily accessible location while transporting drugs and drug proceeds; and (3) Brown's post-arrest statement in which he admitted that he kept the gun for protection. Viewed in the light most favorable to the United States, this evidence was more than sufficient for the jury to reasonably conclude that Brown possessed the firearm in furtherance of the December 4 transaction. See also *United States v. Pinckney*, 85 F.3d 4, 7 (2d Cir. 1996) ("a conviction may be based solely on reasonable inferences from circumstantial evidence").

Furthermore, the jury was not necessarily required to reject Brown's explanation for why he possessed the firearm in order to find him guilty of Count III. Even if he possessed the firearm for dual purposes—protection from another beating and protection of drugs and drug

proceeds—he still could be found guilty under § 924(c). The Seventh Circuit has acknowledged that possession of a firearm for multiple purposes in the § 924(c) context is not "necessarily inconsistent." See *United States v. Huddleston*, 593 F.3d 596, 602-603 (7th Cir. 2010) (affirming § 924(c) conviction even though evidence suggested that defendant possessed the gun for "dual purposes," both to attack his girlfriend and to protect a stash of drugs). Here, even if Brown kept the gun for personal protection, the jury nonetheless could have concluded that he also possessed the gun for protecting the drugs that he was supposed to receive on December 4 and/or the money that he delivered to the undercover officer. The evidence presented at trial concerning the recovery of the firearm from the trap compartment, the fact that the gun was loaded and could be easily concealed, the expert testimony about why drug traffickers often carry firearms, and Brown's post-arrest statements that he needed the firearm for protection (without differentiating between protection from beatings and protection during a drug transaction), was more than sufficient to sustain the guilty verdict as to Count III.

## III. Conclusion

For these reasons, Defendant Brown's post-trial motion for a new trial [150] is respectfully denied.

Dated: March 17, 2011

_____
Robert M. Dow, Jr.
United States District Judge